IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MMA LAW FIRM, PLLC | § § § | |
| *Debtor*, | § § | Adversary No. 24-3127 |
| v. | § § § | |
| MORRIS BART, LLC | § § | Bankruptcy Case No. 24-bk-31596 |
| *Appellant.* | § § | |

**THE UCC'S AMICUS BRIEF ON
MORRIS BART'S SUMMARY-JUDGMENT MOTION**

As authorized by the district court and the bankruptcy court,[1] the UCC[2] submits this amicus brief on the issues raised in Morris Bart's summary-judgment motion.[3]

**Amicus Brief on Relevant Law**

Morris Bart has not established that it's entitled to a summary judgment as a matter of law. To be clear, Morris Bart's summary-judgment motion can be denied given the fact questions MMA raised in its response as to issues like what work was performed by MMA and Velawcity.[4] It can also be denied for other obvious deficiencies—like its failure to identify which MMA clients were allegedly solicited by Velawcity, and thus which attorney's fees are not recoverable because the contracts are void. But the UCC's brief here does not focus on the fact issues swirling around this

---

[1] The "UCC" refers to The Official Committee of Unsecured Creditors for the bankruptcy estate of MMA Law Firm, PLLC.

[2] *See* Civil Case No: 4:24-cv-4446, at ECF No. 17 (scheduling order by district court, permitting UCC to file amicus brief); *see* ECF No. 92 (authorizing UCC to refile its amicus brief here).

[3] *See* ECF No. 96 (Morris Bart's summary-judgment motion).

[4] *See* ECF No. 94.

Page **1** of 15

case. (MMA's response already does that.) Rather, this amicus brief focuses on the legal issues raised in Morris Bart's motion and why the law does not entitle Morris Bart to summary judgment.

Boiled down, Morris Bart's motion should be denied because it cannot establish as a matter of law that MMA engaged in the unauthorized practice of law or that its attorney–client contracts are void. Both legal arguments were already addressed in an earlier case where a Louisiana federal court determined that Morris Bart lacked standing to make these arguments. Having lost those issues there, Morris Bart is now precluded from relitigating them here. Even if it could relitigate those issues, the same legal defects that prompted the Louisiana federal court's decision apply here. Louisiana law prohibits law firms like Morris Bart from claiming another firm engaged in the unauthorized practice of law. And the federal court's limitations on standing mean that Morris Bart cannot seek to void a contract between MMA and its clients that Morris Bart is not a party to. In fee disputes between a discharged law firm and the successor law firm, the Supreme Court of Louisiana established a fact-intensive test to determine how to apportion the contingency fee. That is the law that controls this dispute. Because Morris Bart cannot establish that it's entitled to summary judgment under that standard, its motion should be denied.

1. **Morris Bart's motion should be denied because it cannot establish the unauthorized practice of law or that MMA's employment contracts are null and void.**

Morris Bart cannot establish as a matter of law that MMA engaged in the unauthorized practice of law or that its attorney–client contracts are void. This isn't the first time Morris Bart has made these arguments. It previously sued MMA in Louisiana federal court under the same theories it now urges in defense.[5] In relevant part, it sued because, in its view, MMA engaged in

---

[5] *Morris Bart, L.L.C. v. McClenny Moseley & Assocs., PLLC,* No. CV 23-1453, 2023 WL 6809815, at *1 (E.D. La. Oct. 16, 2023), *appeal dismissed sub nom. Morris Bart, L.L.C. v. McClenny Moseley & Assocs., P.L.L.C.*, No. 23-30812, 2024 WL 2150323 (5th Cir. Jan. 16, 2024).

the unauthorized practice of law as to its former clients and violated Louisiana Revised Statutes § 37:213.[6] Morris Bart also claimed that MMA's employment contracts with its clients are "absolutely null" given MMA's unauthorized practice of law.[7] And it argued that MMA cannot recover attorneys' fees from Morris Bart because MMA violated the Louisiana Rules of Professional Conduct.[8] MMA responded by moving to dismiss Morris Bart's claims under Rule 12(b)(6).[9] Under that standard, the Louisiana federal court took all of Morris Bart's allegations—including that MMA deployed Velawcity as a runner by advertising and communicating with potential hurricane clients—as true.[10] And still the court dismissed Morris Bart's claims.[11]

The Louisiana federal court's decision provides a roadmap for why Morris Bart's summary-judgment motion should be denied. First, the issues raised in Morris Bart's motion are precluded from being relitigated under the doctrine of issue preclusion. Second, Morris Bart lacks the standing to argue that MMA engaged in the unauthorized practice of law or that its attorney–client contracts are unenforceable. MMA addresses each of these points in turn.

### A. Under the doctrine of issue preclusion, Morris Bart cannot relitigate the unauthorized-practice-of-law and null-contract issues it already lost before.

To begin with, the doctrine of issue preclusion bars Morris Bart from relitigating its losing arguments. Under this doctrine, an issue is precluded from being relitigated when there's (1) a prior valid and final judgment; (2) the parties' identity is the same; and (3) the issue was actually

---

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*. at *2.

[10] *Id*. at *3.

[11] *Id*. at **4–8.

litigated and determined—with the determination being essential to the prior judgment.[12] Here, all three elements are met. Morris Bart previously sued MMA and that lawsuit was dismissed.[13] And the central issues in the dismissal decision centered around whether MMA had engaged in the unauthorized practice of law and whether MMA's attorney–client contracts are "absolutely null."[14] Morris Bart now asks this Court to hold on summary judgment that it can't be liable based on the same arguments. The Court should refuse. Losing in Louisiana federal court on the same issues does not entitle Morris Bart to a do-over. Just the opposite, these issues have been decided. And the doctrine of issue preclusion bars them from being relitigated. The Court can therefore reject Morris Bart's losing arguments on this basis alone.

> **B. Morris Bart lacks standing to argue that MMA engaged in the unauthorized practice or that MMA's employment contracts with its clients are unenforceable.**

The Court can also reject Morris Bart's arguments for the same reasons the federal district court did in the original lawsuit—lack of standing. When Morris Bart first sued in Louisiana federal court, it insisted that MMA can't recover attorney's fees because it engaged in the unauthorized practice of law under § 37.213.[15] Morris Bart also urged that MMA can't recover

---

[12] *See Jones v. Daimler Trucks N. Am., Inc.*, 2021-0504 (La. App. 4 Cir. 2/23/22), 336 So. 3d 622, 627; *see also Matter of Aries Marine Corp.*, No. CV 19-10850, 2024 WL 4765478, at *5 (E.D. La. Nov. 13, 2024) (stating elements under federal law).

[13] *See Morris Bart, L.L.C.*, 2023 WL 6809815, at *8 (dismissing Morris Bart's lawsuit against MMA); *see also Goodman v. Spillers*, 28,933 (La. App. 2 Cir. 12/23/96), 686 So. 2d 160, 165, *writ denied*, 97-0225 (La. 3/27/97), 692 So. 2d 393, and *writ denied*, 97-0423 (La. 3/27/97), 692 So. 2d 400 (discussing how a dismissal with prejudice has the effect of a final judgment for issue-preclusion/*res judicata* purposes).

[14] *Morris Bart, L.L.C.*, 2023 WL 6809815, at *4 ("the Court finds that Morris Bart has failed to state a claim for the unauthorized practice of law"); *id.* at ** 7–8 ("According to MMA, Morris Bart lacks standing to seek declarations that MMA's Attorney Employment Contracts are absolutely null and that MMA is not entitled to attorneys' fees pursuant to the Attorney Employment Contracts based on violations of Louisiana's rules of professional conduct.").

[15] *See id.* at *1 ("Morris Bart alleges that MMA's conduct with respect to its former clients violated Louisiana Revised Statutes § 37:213 "because MMA's contacting clients to provide advice related

attorney's fees because any MMA attorney–client contracts procured through Velawcity are void.[16] The Louisiana federal court rejected each of these arguments because they weren't Morris Bart's to make.[17] This Court should too.

**(1) Morris Bart lacks standing to argue the unauthorized practice of law because it is not an aggrieved party under the statute.**

Morris Bart lacks standing to claim that MMA engaged in the unauthorized practice of law because law firms cannot pursue this claim. The Louisiana federal court recognized as much when Morris Bart sued MMA for engaging in the unauthorized practice of law under La. R.S. § 37:213.1.[18] There, MMA argued that Morris Bart couldn't claim the unauthorized practice of law because it wasn't an "aggrieved party."[19] The Louisiana statute only permits an "aggrieved party" to seek relief for the unauthorized practice of law.[20] And the term "aggrieved party" expressly

---

to their claims and continued attempts to negotiate settlements on behalf of these clients constitute the practice of law, but MMA employs no attorney licensed to practice law in Louisiana."); *see also id.* at *4 ("With respect to Morris Bart's unauthorized practice of law claim, MMA argues that it "fails as a matter of law because La. R.S. § 37:213.1(B)(2) expressly precludes 'law firms' from seeking injunctive relief or damages for another actor's alleged unauthorized practice of law.").

[16] *See id.* at *7 ("Morris Bart also argues that it nonetheless has "standing to assert a declaratory judgment action seeking a declaration that the contracts confected with Morris Bart-MMA Clients are absolute nullities based on MMA's unauthorized practice of law."); *see id.* at *1 ("Morris Bart also argues that it nonetheless has "standing to assert a declaratory judgment action seeking a declaration that the contracts confected with Morris Bart-MMA Clients are absolute nullities based on MMA's unauthorized practice of law.").

[17] *See id.* at **4, 6–8.

[18] *See id.* at *4.

[19] *See id.*

[20] *See* La. Stat. Ann. § 37:213.1(D) ("An aggrieved party may sue an actor who is engaging in, or who has engaged in, the unauthorized practice of law for general damages, special damages, and all other damages suffered by the aggrieved party. The court may award the prevailing party all reasonable costs and reasonable attorney fees in connection with the suit.").

excludes attorneys and law firms.[21] MMA therefore argued that Morris Bart couldn't sue for the unauthorized practice of law. Morris Bart agreed. It even *conceded* that it lacked standing: "Morris Bart concedes that it lacks standing to assert an independent claim for the unauthorized practice of law against MMA."[22] The Louisiana federal court agreed too—dismissing Morris Bart's claim.[23]

Here, Morris Bart again claims that MMA engaged in the unauthorized practice of law under § 37:213.1.[24] Nothing has changed since the Louisiana federal court decided this issue. The statute still excludes law firms from being aggrieved parties who can bring such claims. And Morris Bart is still a law firm. So nothing here warrants departing from the Louisiana federal court's holding that Morris Bart lacks standing to argue the unauthorized practice of law. If anything, the circumstances only bolster this conclusion. After all, Morris Bart hasn't even brought a *claim*. It now argues the unauthorized practice of law as a *defense*. But § 37:213.1 is limited in the relief it affords. It allows certain aggrieved parties to *sue* for damages.[25] The statute's text doesn't say that the unauthorized practice of law can be asserted as a defense. Morris Bart hasn't provided any authority for its position. Nor has the UCC found any caselaw suggesting as much. In arguing this nevertheless, Morris Bart urges the Court to supplant the Louisiana legislature and unilaterally amend the statute to (1) redefine an "aggrieved party" to include competitor law firms

---

[21] *See id.* at § 37:213.1(B) ("(2) 'Aggrieved party' means a natural or juridical person who has sustained any damage or harm as a result of an actor engaged in the unauthorized practice of law. The term 'aggrieved party' shall not include an attorney or a law firm.").

[22] *See Morris Bart, L.L.C.,* 2023 WL 6809815, at *4 (internal quotes and cites omitted).

[23] *Id.*

[24] *See, e.g.,* ECF No. 19, at § II ("Louisiana has strong public policies against assisting the unauthorized practice of law and against payment for client solicitation.").

[25] *See* La. Stat. Ann. § 37:213.1(D) ("An aggrieved party may sue an actor who is engaging in, or who has engaged in, the unauthorized practice of law for general damages, special damages, and all other damages suffered by the aggrieved party. The court may award the prevailing party all reasonable costs and reasonable attorney fees in connection with the suit.").

and (2) add a provision allowing aggrieved parties to assert the unauthorized practice of law as a defense to a claim for attorney's fees.[26] That Morris Bart needs the Court to change the law to obtain a summary judgment only confirms why its motion should be denied.

### (2) Morris Bart cannot claim MMA's attorney–client contracts are void because Morris Bart is not a party to that contract.

Morris Bart also lacks standing to argue that MMA's attorney–client contracts are void. No one disputes that Morris Bart is not a party to MMA's employment contracts with its clients. Even so, Morris Bart wants this Court to hold that the contractual relationships between MMA and its clients are null and void based on La. Civ. Code art. 2030.[27]

The Louisiana federal court rejected Morris Bart's same argument because it lacked standing. There, citing La. Civ. Code art. 2030, Morris Bart sought to declare MMA's attorney–client contracts null because they violated the rules of professional conduct.[28] MMA moved to dismiss the claim because "Morris Bart lacks standing to seek declarations that MMA's Attorney Employment Contracts are absolutely null and that MMA is not entitled to attorneys' fees pursuant to the Attorney Employment Contracts based on violations of Louisiana's rules of professional. conduct."[29] As MMA explained, any case or controversy as to the enforceability of the attorney–

---

[26] Morris Bart also hints it can't be liable because MMA allegedly violated § 37:219 by paying Velawcity to solicit. Tellingly, Morris Bart offers no supporting legal authority. It simply attaches an affidavit providing a legal opinion, which of course is not competent summary-judgment evidence. That Morris Bart has no supporting legal authority can be explained by the statute's plain text. Nothing in § 37:219 provides for a defense against liability. In fact § 37:219 doesn't even provide a private right of action, only government penalties. *See* La. Stat. Ann. § 37:219(C). So Morris Bart also lacks standing to enforce alleged § 37:219 violations to shirk its liability.

[27] ECF No. 96, at III.

[28] *Morris Bart, L.L.C.,* 2023 WL 6809815, at *6 (citing La. Civ. Code. Ann. art. 2030).

[29] *Id.* at *6.

client contracts is between MMA and its former clients—not Morris Bart.[30] The Louisiana federal court agreed. In its analysis, the court recognized that while Louisiana law allows a nonparty to void a contract, Article III's standing requirements do not.[31] The court then noted the windfall that would result from declaring MMA's contracts null, as Morris Bart would receive contingency fees earned by MMA before Morris Bart took over the representation:

> Morris Bart has not identified any cases where MMA has demanded or threatened to demand any share of a contingency fee earned by Morris Bart through work it performed after Morris Bart enrolled. Instead, Morris Bart appears to suggest that, if the Court declares all the relevant MMA contracts absolutely null, Morris Bart would be entitled to *any* contingency fees, including attorneys' fees purportedly earned by MMA before Morris Bart took over representation. As MMA puts it, "Morris Bart seeks to step into MMA's (allegedly unethical) shoes and succeed to contingency fees earned solely by MMA in at least 40 matters, *which were settled by MMA*, before Morris Bart was retained[.]" But Morris Bart does not explain why it would be legally entitled to fees for work it did not perform or why those fees should not be returned to the client.[32]

The court then concluded that "Morris Bart's lawsuit is better characterized as an effort to hold MMA 'accountable for [its] legal infractions.' . . . that is simply not a basis for Article III standing in this lawsuit."[33]

The situation here is no different. Any dispute about the enforceability of MMA's employment contracts is between MMA and its clients. That Morris Bart thinks MMA committed legal infractions doesn't empower it to void a contract between two other contracting parties. Imagine the implications otherwise. Could a litigant, for instance, bust an opposing party's attorney–client privilege by arguing their contract is void? At bottom, MMA's attorney-client contracts grant rights to MMA and its clients. Morris Bart lacks standing to void those contractual

---

[30] *Id.*

[31] *Id.*

[32] *Id.* at *8 (cites and footnotes omitted).

[33] *Id.* at **6–8.

rights. Any controversy as to those contracts belongs to MMA and its clients. Morris therefore lacks Article III standing.

Besides issues with Article III standing, Morris Bart also has issues with prudential standing. Prudential-standing requirements exist in addition to Article III standing as part of judicial self-government.[34] One prudential-standing requirement is the "general prohibition on a litigant's raising another person's legal rights."[35] That is, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.[36] In the context of contracts, for example, courts generally do not allow non-parties to a contract to enforce contract rights, regardless of whether a contracting party has harmed the third party in a way that would satisfy Article III standing.[37] Here, Morris Bart's defense hinges on enforcing the contractual rights of MMA's former clients to seek to void their contracts. And in pursuing this defense, Morris Bart asks that the Court decide the rights and enforceability of the contracts between MMA and its former clients. Prudential standing therefore instructs that the Court refuse.

That nonparty Morris Bart's request for the Court to declare a contract between two other parties void is unprecedented is only confirmed by the cases Morris Bart cites. Take the *Gray* case

---

[34] *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *St. Paul Fire & Marine Ins. Co. v. Labuzan,* 579 F.3d 533, 539 (5th Cir.2009)). The Fifth Circuit has held, in a similar context, that this prudential-standing requirement is encompassed in Rule 17(a) of the Federal Rules of Civil Procedure. *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 450 (N.D. Tex. 2015) (citing *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 (5th Cir. 1999)). Rule 17(a), much like the limitation on third party standing, provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. 17(a)(1); *BCC Merch. Sols., Inc.*, 129 F. Supp. 3d at 450.

[35] *Singh v. RadioShack Corp.*, 882 F.3d 137, 150–51 (5th Cir. 2018) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).

[36] *BCC Merch. Sols.*, 129 F. Supp. 3d at 450 (citing *Powers v. Ohio,* 499 U.S. 400, 410 (1991)).

[37] *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 355 (5th Cir. 2020) (citing *Riegel Fiber Corp. v. Anderson Gin Co.*, 512 F.2d 784, 787–88 (5th Cir. 1975)).

that Morris Bart relies on heavily for example.[38] There, the court voided attorney–client contracts that arose from the unauthorized practice of law.[39] But the litigants in that case *were the parties to the attorney–client contracts*.[40] The claims were not brought by a nonparty competing law firm. Morris Bart likewise cites to *Quarternary Res. Investigations, LLC* to bolster its void-contract argument.[41] But that litigation did not involve a nonparty seeking to void a contract either. Rather, that case involved a dispute between a property owner and a contractor over home renovations.[42] In other words, the dispute was between contracting parties—where one party (the home owner) sought to have the contract declared void because the other party (the contractor) entered into the contract without being properly licensed.[43]

In reality, the UCC could not find any cases on point that involved a nonparty voiding attorney–client contracts because they violated the professional rules of conduct, let alone federal cases where the court determined such a nonparty had standing. No reason here warrants becoming the first. The Court should therefore deny nonparty Morris Bart's request to hold that MMA's contracts with its clients are null and void as a matter of law.

---

[38] *See generally Gray v. Atkins*, 331 So. 2d 157 (La. App. 3 Cir. 1976).

[39] *Id.* at 166.

[40] *Id.* at 159.

[41] ECF No. 19, at p. 13 (citing *Quarternary Res. Investigations, LLC v. Phillips*, 2018-1543 (La. App. 1 Cir. 11/19/20), 316 So. 3d 448, 470).

[42] *Quaternary Res. Investigations, LLC*, 316 So. 3d at 451.

[43] *Id.* at 458–61.

2. **Morris Bart's summary-judgment arguments cannot be reconciled with the controlling standard set forth by the Supreme Court of Louisiana in *O'Rourke*.**

The Court should especially do so because Morris Bart's arguments conflict with the *O'Rourke* standard for deciding how to apportion contingency fees between a firm that's discharged and the successor firm. Morris Bart spends most of its motion trying to convince the Court to create a standard for determining whether a firm that's dismissed for cause can earn a portion of the contingency. But the Supreme Court already established the standard in *O'Rourke*.[44] There, the Louisiana Supreme Court determined that a firm that's discharged for cause is to be compensated on a *quantum meruit* basis that, first, calculates the highest ethical contingency the client contractually agreed to; second, allocates the fee between or among discharged and subsequent counsel based on the *Saucier* factors;[45] and third, reduces the percentage amount apportioned to the discharged counsel based on the nature and gravity of the cause that contributed to the dismissal.[46] Nothing about this standard or the *O'Rourke* opinion specifies that certain cause as a matter of law entitles the discharged firm to no fee whatsoever.

Yet Morris Bart insists that the *O'Rourke* standard "assumes a valid and enforceable contingency fee contract, so it is inapplicable here, where the contracts are nullities deemed never to have existed."[47] Morris Bart offers no authority to support this statement. This is no surprise

---

[44] *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So. 2d 697, 698.

[45] *Id.* at 702 n.12 (setting for the following *Saucier* factors: (1) The time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent.).

[46] *Id.* at 704.

[47] ECF No. 96, at p. 16.

because the caselaw indicates the opposite. In the *Reis* case, for example, successor attorneys defending a suit for fees by the discharged attorneys argued that the prior discharged lawyers had forfeited their right to attorney's fees because their attorney–client contracts were unenforceable.[48] The successor attorneys argued that the discharged attorneys failed to record their contingency contract as required by statute.[49] The court disagreed. It held that although the discharged lawyers may not have a claim against the former client, that did not affect their rights against the successor attorneys.[50] In other words, regardless of whether the discharged attorneys had an enforceable contract against their client, they were still entitled to recover fees against the successor lawyers.[51] Under that reasoning, then, Morris Bart's arguments that MMA's attorney–client contracts are unenforceable is irrelevant to whether MMA can recover its appropriate share of fees under the *O'Rourke* standard.

Similarly, Morris Bart's arguments that MMA's attorney–client contracts are void has no bearing on whether MMA is entitled to recover costs. To be clear, Morris Bart says otherwise. It contends that MMA cannot cover any costs it may have advanced because it was charged with knowledge of the rules of professional responsibility. Again, Morris Bart offers no legal authority for this position. Instead, it cites a handful of cases for the proposition that lawyers are charged with knowledge of the professional rules.[52] Morris Bart then cites *Quarternary Res. Investigations,*

---

[48] *Reis v. Fenasci & Smith*, 635 So. 2d 1319, 1322–23 (La. Ct. App. 1994).

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] ECF No. 96, at p. 15 ("MMA is also not entitled to recover any costs it may have advanced in the pursuit of these clients' claims. MMA's Louisiana lawyers were "charged with the knowledge of the Code of Professional Responsibility." *Exnicios v. Saunders*, 448 So. 2d 751, 752 (La. App. 4 Cir. 1984); *see also Nogess v. Poydras Ctr., LLC*, No. 16-15228, 2017 WL 396307, at *17 (E.D. La. Jan. 30, 2017) (explaining that the court adopts Louisiana's Rules of Professional Conduct and

*LLC* and *Vidrine* to say that MMA cannot recover its actual costs expended because its contracts were unenforceable.[53] But *Vidrine* made no holding about whether case costs are recoverable; the Court allowed a preliminary injunction and expressly declined to assess whether the contract was enforceable.[54] Meanwhile, the court's analysis in *Quarternary Res. Investigations, LLC* suggests that advanced costs *are* recoverable. After holding that the contract between the homeowner and the contractor was unenforceable because the contractor lacked a license, the court recognized Louisiana Supreme Court precedent that allows a contractor to recover "the actual costs of their materials, services, and labor" even when the contract is null, so long as there's no allowance for profit or overhead.[55] Similarly, the *Gray* case that Morris Bart relies on also reveals that case costs are recoverable. After holding that the attorneys were legally barred from recovering their fees from the client under a null contract, the appellate court did *not* hold that the attorneys were legally barred from recovering their case expenses too.[56] Rather, the court simply affirmed the factfinding that the defendants had not proved reimbursable costs given their conflicting testimony.[57] In other

---

requires "every attorney permitted to practice in this court" to be "familiar with these rules"); In re Grodner, No. 3:15-mc-88, 2016 WL 81484, at *7 (M.D. La. Jan. 7, 2016) (same).").

[53] ECF No. 96, at p. 15 (citing *Phillips*, 316 So. 3d at 470 and *Vidrine v. Abshire*, 558 So. 2d 288, 292 (La. App. 3 Cir. 1990)).

[54] *Vidrine*, 558 So. 2d at 294 ("We decline to determine the merits of whether the underlying debt is enforceable or not, as the grant of a preliminary injunction is only an interlocutory judgment designed to maintain and preserve the existing status pending a trial of the issues on the merits; in order to obtain the issuance of such an injunction, a petitioner need only make out a prima facie case.").

[55] *Quaternary Res. Investigations*, 316 So.3d 463–64.

[56] *Gray*, 331 So. 2d at 166.

[57] *Id.* (We have considered the claims made by Atkins for reimbursement of alleged advances made and expenses incurred by him in connection with plaintiff's cause of action. The testimony is conflicting as to each of the items claimed, however, and we have concluded, as the trial judge apparently did, that the evidence fails to support defendant's reconventional demand for reimbursement of those alleged advances or expenses.").

words, costs appeared to be legally recoverable despite the contract being declared null, but the defendants failed to prove they'd incurred reimbursable costs.

While Morris Bart tries to create a legal path to avoid paying fees and costs to MMA, the reality is that the extent Morris Bart is liable for fees will turn on the weight of the disputed facts applied to the *O'Rourke* standard. Because those facts are disputed—in all the ways that MMA has spotlighted in its response[58] about the value of its legal services to the clients and Velawcity's appropriate role in the underlying storm cases—Morris Bart cannot avoid liability based on a summary judgment as a matter of law.

## Conclusion

For these reasons, the UCC believes that Morris Bart's summary-judgment motion should be denied and that this case should proceed to trial as soon as possible.

Dated: June 19, 2025         Respectfully submitted,

**LAWSON & MOSHENBERG PLLC**

By: */s/ Avi Moshenberg*
Nicholas R. Lawson
Texas Bar No. 24083367
Avi Moshenberg
Texas Bar No. 24083532
Lawson & Moshenberg PLLC
801 Travis Street
Suite 2101 #838
Houston, TX 77002
Telephone: 832-280-5670
Email: Nick.Lawson@lmbusinesslaw.com
           Avi.Moshenberg@lmbusinesslaw.com

and

---

[58] *See* generally ECF No. 94.

**OTTERBOURG P.C.**

Sunni P. Beville (admitted *pro hac vice*)
James V. Drew admitted (*pro hac vice*)
230 Park Ave.
New York, NY 10169-0075
Telephone: (212) 661-9100
Email: sbeville@otterbourg.com
         jdrew@otterbourg.com

*Counsel for the Unsecured Creditors Committee*

### Certificate of Service

I hereby certify that a true and correct copy of the above was electronically mailed to the parties that are registered to receive electronic notices *via* CM/ECF in this case on June 19, 2025.

        */s/ Avi Moshenberg*
        Avi Moshenberg