## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MMA LAW FIRM, PLLC, | § | **CASE NO: 24-31596** |
| | § | **(Chapter 11)** |
| Debtor. | § | |
| MMA LAW FIRM, PLLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **Adv. Pro. No. 24-3127** |
| | § | |
| MORRIS BART, LLC, | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |

## OPPOSITION TO MOTION TO COMPEL
### [Ref. Dkt. No. 138]

**TO THE HONORABLE EDUARDO V. RODRIGUEZ, CHIEF BANKRUPTCY JUDGE:**

COMES NOW, MORRIS BART, LLC (the "Defendant"), and respectfully submits this Opposition to MMA Law Firm, PLLC's Emergency Motion to Compel Production from Morris Bart, LLC (the "Motion to Compel").

### I.     SUMMARY OF THE FACTS AND RELIEF REQUESTED

In its Interrogatory Numbers 6 and 9, Request for Production Numbers 8 and 9, and Request for Admission Number 1 (collectively, the "Mediation Discovery Requests"), MMA Law Firm, PLLC ("MMA") seeks unbridled discovery into "all communications" "relating or referencing MMA or Mr. Moseley" made to any "Louisiana court, judge, or court staff," and further requests specific details concerning communications made to United States Magistrate Judge Michael North ("Judge North") during the mediation of a former MMA case, *Foskey et al v. American Modern Properly and*

*Casualty Insurance Company.* 2:23-CV-5316 (E.D. La.) ("the Foskey Case").[1] MMA's Mediation Requests are not reasonably calculated to lead the production of evidence relevant to MMA's claims and Morris Bart's defenses in this Adversary Proceeding, are overbroad and unduly burdensome (to the extent they seek a detailed accounting of all communications made in any court proceeding, including mediations, regarding MMA), and are otherwise privileged, confidential, and not subject to disclosure under LA. REV. STAT. § 9:4112 and the local rules of the Louisiana federal district courts.

Additionally, and as a preliminary matter, MMA recognizes in its Motion to Compel that these Mediation Requests are at the "heart" of this Court's October 3rd and October 6th Show Cause Orders, which Orders are currently on appeal to the United States District Court for the Southern District of Texas (the "District Court"), Civil Action Number 25-cv-5013, and subject to a Writ of Mandamus and Motion to Stay also filed in the Southern District of Texas in Civil Action No. 25-cv-04917. In light of these filings before the District Court, this Court currently lacks jurisdiction to rule on the merits of MMA's Motion to Compel and, in any event, this Court should defer ruling on the merits of MMA's Motion to Compel until the District Court has rendered its decision on these very issues. Therefore, Morris Bart requests that the Court defer ruling on the merits of MMA's Motion to Compel until the District Court has issued its ruling on appeal or mandamus regarding this Court's ability to order production and/or disclosure of the sought communications. Alternatively, Morris Bart respectfully requests that MMA's Motion to Compel be denied.

---

[1] MMA's Interrogatory Number 9 requests that Morris Bart "[d]escribe in detail all facts and circumstances surrounding the entry of the Foskey Order." MMA does not reference Interrogatory Number 9 in its Motion, and thus it is not the subject of this Motion to Compel. Out of an abundance of caution, however, Morris Bart includes Interrogatory Number 9 as part of the "Mediation Requests" and asks that the Court uphold Morris Bart's objections thereto for the reasons set forth herein.

## II.   RELEVANT PROCEDURAL BACKGROUND

### A.   The Adversary Proceeding and the Foskey Case

1.      On April 9, 2024, MMA Law Firm, PLLC ("MMA") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code in the case styled *In re MMA Law Firm, PLLC*, Case No. 24-31596, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

2.      On June 24, 2024, MMA filed an adversary complaint against Morris Bart, LLC ("Morris Bart") styled *MMA Law Firm, PLLC v. Morris Bart, LLC*, Adv. Pro. No. 24-ap-3127 (the "Adversary").

3.      On July 9, 2024, this Court held a hearing on MMA's application for preliminary injunction. After taking evidence and hearing argument, the Court ruled in open court that a preliminary injunction would be entered. On July 15, 2024, the Court entered a written Preliminary Injunction (the "Preliminary Injunction").[2]

4.      On July 23, 2024, Morris Bart timely filed its Notice of Appeal of the Preliminary Injunction. That appeal is still pending in the Southern District of Texas (the "District Court") under Civil Action No. 4:24-cv-2793.

5.      Prior to these bankruptcy proceedings, MMA was counsel to Sherry and Irving Foskey until MMA's representation was terminated due to its conduct in the hurricane cases in Louisiana. Morris Bart was subsequently engaged by the Foskeys as counsel and represented them in their case pending in the United States District Court for the Eastern District of Louisiana, 2:23-CV-5316 ("the Foskey Case").

6.      The Foskey Case was the subject of a Case Management Order in the Eastern

---

[2] *See* Exhibit 18, R. Doc. 31 (Preliminary Injunction).

District of Louisiana and was sent to the special master for mediation. That mediation failed. Because the mediation with the special master failed, the special master sent a report to the Court in the Foskey Case advising the Court of the failed mediation. Judge North then set a settlement conference in numerous cases in which mediation failed, including the Foskey Case.[3]

7.     On November 14, 2024, Judge North held the settlement conference in the Foskey Case telephonically. Counsel for the defendant in the Foskey Case participated in the telephone settlement conference along with Morris Bart's attorney who was handling the Foskey Case. Settlement discussions took place.[4]

8.     On December 12, 2024, Judge North entered the Foskey Order.[5] In the Foskey Order, Judge North explained generally why he was entering the order in the first few paragraphs, writing:

> The undersigned recently held a settlement conference with the parties in this case. During that conference, an agreement in principle was reached, but *certain impediments to final settlement arose* that implicate the well-known and numerous misdeeds of Plaintiffs' former counsel, McClenny, Moseley & Associates ("MMA").   In a previous matter in this Court, the undersigned issued an Order – never appealed by MMA – finding that MMA had knowingly and voluntarily forfeited its rights to intervene or otherwise seek to recover fees and/or costs in <u>any</u> case then pending in this District, including this one.   *During the aforementioned settlement conference*, the Court was made aware of certain pleadings, arguments, and rulings that have recently been made in the adversary proceeding, *MMA Law Firm, PLLC v. Morris Bart, LLC*, pending in the Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Case").[6]

---

[3] *See* Exhibit 4, Foskey Case, 2:23-CV-5316 (E.D. La.), at R. Doc. 15 (Order No. 19 Directing Parties to Schedule Settlement Conference) ("Pursuant to Section 3. E of CMO No. 1. in this matter, the undersigned has been notified that the parties in the cases listed below jointly request a settlement conference with the assigned Magistrate Judge following unsuccessful mediations via the SSP. Accordingly, counsel for the parties in these cases are directed to contact the assigned Magistrate Judge as soon as possible to schedule a settlement conference. These cases will remain subject to the CMO pending that settlement conference and counsel shall notify the undersigned of the result of their settlement conference after it takes place.").

[4] *See* Exhibit 5, Foskey Case, 2:23-CV-5316 (E.D. La.), at R. Doc. 17 (Minute Entry following settlement conference).

[5] *See* Exhibit 6, Foskey Case, 2:23-CV-5316 (E.D. La.), at R. Doc. 21 (the "Foskey Order").

[6] *See id.* at 1-2 (emphasis added). *See also Ricks v. Imperial Fire & Casualty Insurance Co.*, No. 23-cv-02844, at R. Doc. 51 (finding that MMA had knowingly and voluntarily forfeited its rights to seek to recover any fees or costs pending in the United States District Court for the Eastern District of Louisiana).

9.      In the next to last sentence of the Foskey Order, Judge North ordered Morris Bart "to file a copy of this Order in the record of the Bankruptcy Court for the Southern District of Texas."[7]

10.     On December 12, 2024, in compliance with the Foskey Order, counsel for Morris Bart filed its Defendant's Notice of Order Entered in Sherry Foskey Case in this Court (R. Doc. No. 81) and in the Civil Action in which the appeal of the Preliminary Injunction is pending (Civil Action 4:24-cv-2793, R. Doc. No. 21), attaching a copy of the Foskey Order.

11.     On December 12, 2024, the District Court entered an order rejecting in part a Report and Recommendation of this Court and withdrew the reference over this Adversary Proceeding.

12.     On December 13, 2024, MMA filed its Debtor's Response to Notice Filed by The Probus Law Firm and Fishman Haygood, LLP on Behalf of Morris Bart,[8] and its Debtor's Response to Notice Filed by Appellant Morris Bart, LLC.[9] In those pleadings, MMA alleged that Morris Bart "engaged in an unauthorized *ex parte* meeting with Judge North, resulting in an advisory opinion from a non-bankruptcy court that lacks both personal and subject matter jurisdiction" in a "deliberate attempt to undermine" the bankruptcy court's jurisdiction and in "flagrant and intentional disobedience" of the bankruptcy court's injunction.[10]

13.     On December 19, 2024, the District Court entered its Order in the appeal of the Preliminary Injunction relating to the Foskey Order.[11] In that Order, the District Court wrote in pertinent part:

> Morris Bart, LLC ("Morris Bart") filed an order with this court from the Eastern District of Louisiana case *Foskey et al v. American Modern*

---

[7] *See* Exhibit 6, at 11 (Foskey Order).
[8] *See* Exhibit 7, R. Doc. 82 (Response to Notice).
[9] *See* Exhibit 8, Civil Action 4:24-cv-2793, R. Doc. 22 (Response to Notice).
[10] *See* Exhibits 7, 8.
[11] *See* Exhibit 9, Civil Action 4:24-cv-02793, at R. Doc. 24 (Order).

*Properly and Casualty Insurance Company.* 2:23-CV-5316 (the "*Foskey* Order"). (Doc. No. 21-1). MMA Law Finn. PLLC ("MMA" or "Debtor") filed a response claiming that Morris Bart obtained this order secretly by *ex parte* communications. (Doc. No. 22).

For purposes of this Court's handling of the matter before it, this Court need not resolve the issue of how the *Foskey* Order came to be issued.[1] Likewise, this Court need not rely upon, or even cite, the *Foskey* Order. While there is no live motion that accompanies either filing, the Court notes that it does not serve either side of this controversy or the overall resolution of MMA's bankruptcy proceeding for adverse parties to engage in hurling epithets or accusations against the other--especially when the attorneys doing the hurling are both practicing members of the Bar of this Court and were not involved in the underlying events that triggered this entire mess.[12]

14.     On May 20, 2025, the District Court further entered an order referring pretrial matters to the Bankruptcy Court for handling.[13]

15.     On October 1, 2025, in apparent response to a Motion for Certification to the Louisiana Supreme Court filed by Morris Bart in its separate appeal to the District Court from this Court's denial of Morris Bart's Motion for Summary Judgment,[14] MMA filed a Motion for an Order to Show Cause Morris Bart, LLC and Additional Relief Under 11 U.S. C. §105(a) to Halt Morris Bart's Repeated Forum Shopping and Abuse of Process (the "Show Cause Motion"), in which MMA asked this Court to issue an order to show cause why Morris Bart "should not be held in contempt or otherwise sanctioned for violating this Court's Injunction, in connection with the Ex Parte Foskey Order issued by the Magistrate Judge that directly contradicts the terms of this Court's Injunction."[15]

16.     On October 3, 2025, this Court entered an order directing Morris Bart "by and through its corporate representative," as well as Morris Bart, III, to "appear in person . . . and show

---

[12] *Id.* at 1-2.
[13] Civil Action 4:24-cv-4446, Doc. No. 21.
[14] Civil Action 4:25-cv-04059, at R. Doc. 6.
[15] *See* Exhibit 10, R. Doc. 130, at 7 (Show Cause Motion).

cause why they should not be held in contempt or otherwise sanctioned for violating this Court's

Injunction Order entered on July 15, 2024 relating to the *Ex Parte* Order issued by Magistrate

Judge North (the "*Foskey Order*") . . . and sanctioned . . . "[16]

17.     Particularly relevant here, the Order further provides:

> No later than **Friday, October 17, 2025** Morris Bart, LLC and Mr. Morris Bart, III must file a Notice with the Clerk of Court identifying by name, with contact information all attorney's employed by or acting on behalf of Morris Bart, LLC who were present for the mediation of the *Foskey* case before Magistrate Judge North, or who participated in, facilitated, or had any communications, meetings, or other involvement with Magistrate Judge North, his chambers, or his staff in connection with the mediation of the *Foskey* case or the entry of the *Ex Parte* Foskey Order.[17]

18.     On October 6, 2025, Morris Bart filed Defendant's Unopposed Expedited Motion

for Reset Hearing Date, which this Court granted on October 7, 2025, re-setting the show cause

hearing to January 14, 2026 (collectively with the October 3, 2025 Order, the "Show Cause

Orders").[18]

19.     On October 15, 2025, Morris Bart filed a timely Notice of Appeal to the District

Court of this Court's Show Cause Orders because they require Petitioners to reveal

communications that are the subject of mediation confidentiality.[19]

20.     That same day, Morris Bart also filed a Petition for Writ of Mandamus to the

District Court, Case No. 25-cv-04917, which was assigned to Judge Hanen, asking that the District

Court vacate the Show Cause Orders on the same grounds.[20] In the Mandamus Action, Morris Bart

then filed an Emergency Motion to Stay Contempt Order Pending Review of Petition.[21]

21.     On October 16, 2025, this Court issued an "Order Pursuant to Bankruptcy Rule

---

[16] *See* Exhibit 11, R. Doc. 132 at ¶ 2 (Order Setting In-Person Hearing).
[17] *See id.* at ¶ 3.
[18] *See* Exhibit 12, R. Doc. 135 (Order Re-Setting In-Person Hearing).
[19] *See* Exhibit 13, R. Doc. 140; Exhibit 14, No. 25-cv-5013, at R. Doc. 1 (Notice of Filing of an Appeal).
[20] *See* Exhibit 15, No. 25-cv-04917 (S.D. Tx), at R. Doc. 1 (Writ of Mandamus).
[21] *See* Exhibit 16, No. 25-cv-04917 (S.D. Tx), at R. Doc. 2 (Emergency Motion to Stay).

8008(a) *Regarding ECF Nos. 130, 132, 135, and 140*" (the "Indicative Ruling"). In that Order, the Court found that, because of Morris Bart's appeal, it lacked jurisdiction to grant the Show Cause Motion, but that pursuant to Bankruptcy Rule 8008(a), it had jurisdiction to issue an indicative ruling that, "If the District Court were to remand this case, this Court would issue an amended order . . . . permit[ting] Morris Bart, LLC's corporate representative and Mr. Morris Bart, III and their counsel to appear remotely through this Court's well established electronic and telephonic platforms."[22]

**B.  The Discovery Requests**

22.     On September 10, 2025, MMA served Interrogatories, Requests for Production of Documents, and Requests for Admission (the "Discovery Requests") on Morris Bart which, in relevant part, sought communications and documents exchanged with "any Louisiana court, judge, or staff relating or referencing MMA or Mr. Moseley."[23] The Discovery Requests also included requests specific to the Foskey Case, including a Request for Admission that "You discussed MMA's entitlement to attorney's fees in the Former MMA Cases with Judge North prior to the entry of the Foskey Order outside the presence of MMA and its counsel,"[24] and an Interrogatory requesting that Morris Bart "[d]escribe in detail any mediation session in which Judge North participated involving any party affiliated with [Morris Bart]" in which the Adversary Proceeding or MMA was discussed.[25] These Discovery Requests seeking communications with Louisiana Courts and that are the subject of MMA's instant Motion to Compel (Interrogatory Nos. 6, 9, Requests for Production 8 and 9, and Request for Admission No. 1) are collectively referred to herein as the "Mediation Requests."

---

[22] *See* Exhibit 17, R. Doc. 143, at 2-3 (Indicative Ruling) (footnotes and citations omitted).
[23] R. Doc. 138-7, MMA's Interrogatories to Morris Bart, at Interrogatory Nos. 6, 9; R. Doc. 138-8, MMA's Requests for Production of Documents, at Request for Production Nos. 8, 9.
[24] *See* R. Doc. 138-9, Request for Admission No. 1.
[25] R. Doc. 138-7, MMA's Interrogatories to Morris Bart, at Interrogatory No. 9.

On October 10, 2025, Morris Bart issued its timely responses to MMA's Requests for Production. Morris Bart objected to the Requests as not relevant, not reasonably calculated to lead to the production of information relevant to any claim or defense, and calling for the production not subject to disclosure as privileged or confidential pursuant to Louisiana Revised Statutes § 9:4112, Texas Civil Practice & Remedies Code § 154.073, Federal Rule of Evidence 408, Local Rule 16(b) of the United States District Court for the Middle District of Louisiana, Local Rule 16.3.1 of the United States District Court for the Western District of Louisiana, Local Rule 16.3.1 of the United States District Court for the Eastern District of Louisiana, and Local Rule 16.4(H) of the United States District Court for the Southern District of Texas.[26]

On October 13, 2025, the parties held a call which was originally intended only to discuss the potential use of search terms to narrow the voluminous document production requested by MMA. On the call, however, counsel for MMA walked through Morris Bart's responses to MMA's Discovery Requests and made various objections thereto. As to Requests pertaining to communications with the Court and specific to the Foskey Order, counsel for Morris Bart affirmed that they would maintain their objections to those Requests but that they would need to first confer with the client as to whether a privilege log would be provided with respect to the mediation privilege objections asserted therein.

On October 13, 2025, MMA filed the instant Emergency Motion to Compel (R. Doc. 138), to which Morris Bart now responds.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) governs the scope of permissible discovery and

---

[26] *See* Exhibit 2, Morris Bart's Responses to Requests for Production; Exhibit 1, Morris Bart's Responses to Requests for Admission; Exhibit 3, Morris Bart's Responses to Interrogatories.

4074671v2

provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" *See* FED. R. CIV. P. art. 26(b)(1). District courts have wide discretion to fashion the scope of discovery, including the "ability to set the timing and sequence of discovery and tailoring the discovery process to focus narrowly on one issue before expanding the scope of discovery." *See Torres v. State Farm Lloyds,* No. 7:14-CV-421, 2015 WL 13674687, at *2 (S.D. Tex. Jan. 15, 2015) (citing *Crawford-El v. Britton*, 523 U.S. 574 (1998); FED. R. CIV. P. 26(d)).  Despite this broad discretion, "[h]owever, district courts are tasked with guarding against abusive discovery, including 'an unwieldy, burdensome, and speculative fishing expedition.'" *See id.* (quoting *Bradley v. Boysville, Inc.*, 240 F.3d 1073 (5th Cir. 2000)). Federal Rule of Civil Procedure further counsels that the Court must limit the frequency of discovery allowed by the rules if it determines that the discovery is unreasonably cumulative or duplicative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, if the party seeking discovery has had opportunity to obtain the information through discovery, and the discovery is outside that permitted under Article 26(b)(1). *See* FED. R. CIV. P. art. 26(b)(2)(C).

## IV. LAW AND ARGUMENT

### A. This Court should defer ruling on the Motion to Compel until the District Court has issued its ruling in relation to Morris Bart's Writ of Mandamus and Notice of Appeal on this same issue.

As explained by MMA in its Motion to Compel, the discovery requests at issue are those seeking:

> (1) all communications between Morris Bart and any Louisiana court, judge, or court staff relating to MMA or Mr. Moseley (Request for Production Nos. 8 and 9); (2) an interrogatory asking Morris Bart to describe all communications with any Louisiana judge or court staff concerning MMA's interest in fees, including the name of the individual communicated with, method and location of communication, and substance of the discussion (Interrogatory No. 6); and (3) a request for admission asking whether Morris Bart discussed MMA's entitlement to

10

fees in the Foskey case with Judge North outside the presence of MMA or its counsel (Request for Admission No. 1).[27]

Notably, the information requested in the above discovery requests includes that which the Court sought to be produced at the hearing set in its Show Cause Orders—information detailing Morris Bart's and its attorneys' "involvement with Magistrate Judge North, his chambers, or his staff in connection with the mediation of the *Foskey* case or the entry of the *Ex Parte* Foskey Order."[28] MMA recognizes as much in its Motion to Compel, wherein it argues that "[t]he discovery MMA seeks goes directly to the heart of the issues raised in this Court's Show Cause Order[,]"[29] and the "communications sought are directly relevant to this Court's pending Show Cause Order."[30]

In its October 16, 2025, Indicative Ruling, this Court recognized that "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers the jurisdiction of the court of appeals and divests the district court over those aspects of the case *involved in the appeal*. This rule applies with equal force to bankruptcy cases."[31] In its Motion to Compel, MMA seeks to compel Morris Bart to describe all communications with Judge North during the *Foskey* mediation, as well as other mediations and settlement conferences with other United States Magistrate Judges in Louisiana— exactly what this Court seeks to compel Morris Bart to discuss at the hearing on its Show Cause Orders, which are now on appeal. Accordingly, because the matters at issue in MMA's Motion to Compel are those involved in the appeal to the District Court, this Court lacks jurisdiction to rule on MMA's Motion to Compel, and the Court should defer ruling on these issues until an appellate decision has been rendered.

---

[27] *See* Motion to Compel, R. Doc. 138, at 8.
[28] *See* Exhibit 11, R. Doc. 132, at ¶ 3 (Order Setting in Person Hearing).
[29] *See* Motion to Compel, R. Doc. 138, at ¶ 31.
[30] *Id*. at ¶ 44.
[31] *See* Exhibit 17, R. Doc. 143, at 2 (emphasis added) (Indicative Ruling) (citing *In re Transtexas Gas Corp*., 303 F. 3d 571 (5th Cir. 2002)).

Alternatively, should the Court find that it has jurisdiction to render a decision on MMA's Motion to Compel, deferral of the Court's ruling is nevertheless appropriate. Again, whether or not Morris Bart may be compelled to produce and describe various mediation and/or settlement conversations with Louisiana magistrate judges is an issue now on appeal to the District Court. Accordingly, should this Court rule in MMA's favor on MMA's Motion to Compel, Morris Bart will again have to appeal the matter to the District Court alongside its other appeal of the Court's Show Cause Orders. Morris Bart respectfully asks that the Court defer its ruling on MMA's Motion until a time following a decision from the appeal of this Court's Show Cause Orders, which decision will determine whether Morris Bart is required to disclose the details of its mediation communications.

### B. Alternatively, MMA's Mediation Requests are Irrelevant, Unduly Burdensome, and Non-Discoverable under State Statutes and District Court Local Rules.

*i.   The Mediation Requests are not relevant to these proceedings.*

In its  Debtor's Response to Notice Filed by The Probus Law Firm and Fishman Haygood, LLP on Behalf of Morris Bart filed in the docket of the appeal of the Preliminary Injunction, MMA argued that Morris Bart obtained the order secretly through *ex parte* communications.[32] In its Order on the issue of the *Foskey* Order, the District Court found that "the issue of how the Foskey Order came to be issued" was not relevant, and that:

> it does not serve either side of this controversy or the overall resolution of MMA's bankruptcy proceeding for adverse parties to engage in hurling epithets or accusations against the other—especially when the attorneys doing the hurling are both practicing members of the Bar of this Court and  were not involved  in  the  underlying  events  that  triggered  this  entire  mess.[33]

As found by the District Court, how the *Foskey* Order came to be is simply not relevant to these proceedings, and the Foskey Order, which merely provided clarification of the Eastern District's

---

[32] Exhibit 8, Civil Action 2:23-CV-5316, at R. Doc. 22 (Response to Notice).
[33] Exhibit 9, Civil Action 4:24-cv-02793, R. Doc. 24, at 1-2 (Order).

prior order in *Ricks v. Imperial Fire & Casualty Insurance Co.*, No. 23-cv-02844, does not affect or change the "Debtor's interest or any entitlement to fees or costs reimbursement" so as to potentially implicate the prohibitions set forth in this Court's Preliminary Injunction.

This is particularly true because, as counsel for Morris Bart explained during the hearing on Morris Bart's Motion for Summary Judgment, the *Foskey* Order had no impact on Morris Bart's conduct with respect to fees in which MMA claims an interest. As it is required to do by this Court's Preliminary Injunction, Morris Bart has at all times placed into escrow the entirety of any attorneys' fee received, along with any costs claimed by MMA, from the recovery of every former MMA client now represented by Morris Bart—including those whose cases were filed in the Eastern District of Louisiana.

MMA's renewed requests for communications during the Foskey mediation as well as mediation communications with any and all other judges and/or court staff in Louisiana is nothing more than a fishing expedition that bears no relevance to MMA's claims or defenses. MMA's Motion should be denied and the Court should sustain Morris Bart's relevance objections.

    ii.    *The Discovery Requests are unduly burdensome and not proportional to the needs of the case.*

MMA's Mediation Requests seek details concerning and documents evidencing communications with "any Louisiana court, judge, or staff relating or referencing MMA or Mr. Moseley."[34] These Requests are unambiguously overly broad, unduly burdensome, and not proportional to the needs of the case. *See* FED. R. CIV. P 26(b)(1). Indeed, these Requests, on their face, call for details concerning every pleading, oral argument, hearing, status conference, or other court proceeding in all of the former MMA cases wherein MMA or Mr. Moseley may have been

---

[34] R. Doc. 138-7, MMA's Interrogatories to Morris Bart, at Interrogatory No. 6; R. Doc. 138-8, MMA's Requests for Production of Documents, at Request for Production Nos. 8, 9.

referenced. Morris Bart should not be required to undergo the herculean effort associated with responding to such a request, and MMA cannot even begin to explain how or why this information is relevant to its claims in this matter. *See Crosby v. Louisiana Health Serv. & Indem. Co.,* 647 F.3d 258, 264 (5th Cir. 2011) ("Rule 26(b)(2), which protects against, *inter alia,* overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests" . . . "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (quoting *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1163 (10th Cir. 2010) (internal marks omitted)); *Chouceir v. Hartford Fire Ins. Co.,* No. CV 24-2228, 2025 WL 1735409, at *2 (E.D. La. June 23, 2025) ("While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery."). For this reason, as well as those set forth elsewhere in this Opposition, MMA's Motion should be denied.

   iii. *The information sought by MMA is privileged and confidential under Louisiana law and the local rules of Louisiana District Courts.*

In a civil action such as this Adversary Proceeding, where state law supplies the rule of decision, privileges are to be determined in accordance with state law. FED. R. EVID. 501; *Boudreaux v. CJR Framing*, 744 Fed. Appx. 208, 209 (5th Cir. 2018); *In re Avantal, S.A.*, 343 F.3d 311, 318 n. 6 (5th Cir. 2003). Louisiana law regarding the mediation privilege provides:

> All oral and written communications and records made during mediation, whether or not conducted under this Chapter and **whether before or after the institution of formal juridical proceedings**, are **not subject to disclosure**, and may not be used as evidence in any judicial or administrative proceeding. . . The **parties, counsel, and other participants therein shall not be required to testify concerning the mediation proceedings and are not subject to process or subpoena, issued in any judicial or administrative procedure**, which requires the **disclosure of any communications or records of the mediation** [ . . . ].

14

4074671v2

L<small>A</small>. R<small>EV</small>. S<small>TAT</small>. § 9:4112 (A) and (B)(1) (emphasis added). Although the statute sets forth certain exceptions to the privilege, none of those exceptions apply here. Morris Bart and its attorneys have the right to ask this Court to prevent disclosure of communications or materials subject to the mediation privilege. *See* L<small>A</small>. R<small>EV</small>. S<small>TAT</small>. § 9:4112(D).

The express terms of the Louisiana statute provide a broad privilege against discovery and use of mediation communications as evidence in any judicial proceeding. It is the policy of the State of Louisiana to encourage the peaceable resolution of disputes, including the settlement of pending litigation through mediation. Mediation encourages candid disclosures, and indeed, depends on them. For these reasons, the privilege is applied strictly. *See Thrasher v. Metropolitan Property and Cas. Ins. Co.,* No. 06-2317, 2007 WL 4553605 *2 (W.D. La. Dec. 18, 2007) (rejecting argument by party seeking discovery that it did not expect to present the communications as evidence). The phrase "made during mediation" is not limited to communications made in a face-to-face meeting. *Miller v. Gorski Wladyslaw Estate*, No. 04-1250, 2007 WL 9734153 *3 (W.D. La. Feb. 19, 2007). "Since the Louisiana Mediation Act defines 'mediation' as a procedure whereby a 'mediator' facilitates communication between the parties, it is reasonable to construe the term 'made during mediation' to mean communications through, with or in front of a mediator, or, perhaps, communications between the parties directly, but made at the mediator's urging or direction." *Id.* As the *Miller* court further noted,

> It is not unusual for negotiations to continue after a mediation session with a mediator has concluded if no settlement is reached. Sometimes these negotiations continue with the mediator and sometimes the negotiations occur between the parties without involving the mediator. This court is well aware that mediation is a "process" and not a formal proceeding. **As long as communication between the parties involves the mediator, then that communication can be truly said to be "during the mediation[,"] even if the face-to-face mediation has ended**.

15

*Id.* (emphasis added). The *Miller* court enforced the mediation privilege in spite of the discovering party's argument that the information and communications they sought related to the court's determination of the meaning and enforceability of the settlement agreement. *Id.*

In addition to the statute, the local rules of the district courts in Louisiana similarly recognize that alternative dispute resolution proceedings, including mediations, are confidential. Local Rule, E.D. La. 16.3.1 ("All alternative dispute resolution proceedings are confidential."); Local Rule, W.D. La. 16.3.1 (accord); Local Rule, M.D. La. 16(b) (accord).

Notably, the policy underlying Louisiana's statute and Louisiana courts' local rules governing the privileged and confidential nature of mediation communications is not unique to Louisiana. Indeed, Texas Civil Practice & Remedies Code § 154.073 provides that a communication "made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding," and that "the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute." Local Rule 16.4(H) of the Southern District of Texas likewise provides that "All communications made during ADR proceedings (other than communications concerning scheduling, a final agreement, or ADR provider fees) are confidential, are protected from disclosure, and may not be disclosed to anyone, *including the Court*, by the provider or the parties." (emphasis added).

It is the practice of Louisiana district courts that the presiding Magistrate Judge serve as the mediator during court-ordered settlement conferences. By seeking all communications with

16

Louisiana courts and judges regarding MMA's entitlement to fees—an issue that was raised in many if not most settlement conferences of former MMA cases as the parties tackled the logistics of issuing settlement checks, etc.—and details of communications made during the *Foskey* mediation, MMA's Mediation Requests explicitly demand disclosure of information made privileged and confidential by Louisiana statute and district court local rules. This information is privileged, confidential, and non-discoverable. MMA's Motion to Compel should be denied.

*iii. The exceptions to Louisiana Revised Statutes § 9:4112 do not apply.*

MMA first argues that Louisiana Revised Statutes § 9:4112 does not apply because it applies only to communications made in the context of resolving a dispute between parties, and MMA was "not a party to the settlement in the Foskey matter."[35] First, MMA's argument misrepresents the language of § 9:4112, which plainly provides that "communications and records ***made during mediation,*** whether or not conducted under this Chapter and whether before or after the institution of formal judicial proceedings, are not subject to disclosure, and may not be used as evidence in any judicial or administrative proceeding." *See* LA. REV. STAT. § 9:4112(A) (emphasis added). Second, the extent to which MMA is potentially entitled to fees and Morris Bart must escrow fees are issues that necessarily arise, and must be addressed, during the settlement conferences of former MMA cases, as was the case in Foskey.[36] Thus, even if the Louisiana statute was written as MMA contends, the at-issue communications were still made within the context of resolution of the Foskey Case and are unambiguously protected. Again, MMA's Requests are nothing more than a fishing expedition—one that is prohibited under Federal Rule of Civil Procedure 26, Louisiana statute, and the Eastern District's local rules.

---

[35] *See* Motion to Compel, at ¶ 39.
[36] *See, e.g.,* Exhibit 6, Foskey Order, at 1 ("During that [settlement] conference, an agreement in principle was reached, but certain *impediments to final settlement* arose that implicate the well-known and numerous misdeeds of Plaintiffs' former counsel, McClenny, Moseley & Associates ('MMA')" (emphasis added)).

Second, MMA again misleads the Court as to the plain language of the statute, arguing that Section B(1)(C) allows disclosure where necessary to prevent "manifest injustice." The provision, in fact, actually provides that disclosure of certain communications may be permitted if necessary with respect to: "**A judicial determination of the meaning or enforceability of an agreement resulting from a mediation procedure *if the court determines*** that testimony concerning what occurred in the mediation proceeding is necessary to prevent fraud or manifest injustice." *See* LA. REV. STAT. § 9:4112(C) (emphasis added). This matter does not concern the meaning or enforceability of the settlement agreement in the Foskey (or any other) matter, and this provision is plainly inapplicable.

Third, MMA argues that disclosure is permitted under subsection (C) of the statute, which provides:

> C. The confidentiality provisions of this Section do not extend to statements, materials and other tangible evidence, or communications that are otherwise subject to discovery or are otherwise admissible, merely because they were presented in the course of mediation, ***if they are based on proof <u>independent</u> of any communication or record made in mediation***.

*See* LA. REV. STAT. § 9:4112(C) (emphasis added). The statute thus provides that, just because evidence was submitted during mediation, that evidence existing or created independent of the mediation is not immune from discovery simply because it was presented during the mediation. *See Simonne ST. PE v. Roto-Rooter Servs. Co.,* 25-299 (La. App. 5 Cir. 8/13/25) (finding that defendants had an obligation to produce expert reports and supplement discovery responses independent of the mediation). Here, MMA seeks mediation communications—not evidence or documents created independently of the mediation. This exception does not apply.

Finally, MMA argues that only this Court has authority to determine if the mediation communications are discoverable under Subsection (D). While this subsection does permit an *in*

18

*camera* inspection, it does so only where the statute conflicts with other "legal requirements for disclosure of communications or materials." *See* LA. REV. STAT. § 9:4112(D). MMA has not cited any law that mandates disclosure of the sought communications with Judge North or other courts, and this subsection likewise does not apply.

   iv. *Fishman Haygood's emails to Judge North's Chambers, copying counsel for MMA, were intended to notify Judge North of this Court's demand for disclosure of **his** communications.*

This Court's Show Cause Orders directed Morris Bart and Morris Bart, III to appear and discuss communications **with Judge North** made during the Foskey mediation. As set forth above, these communications are privileged and confidential under both Louisiana statute and the Eastern District's local rule. Moreover, the Court's Orders further suggest that Judge North's Foskey Order was the product of "improper conduct or abuse of process." Because the Show Cause Order directly affects Judge North—a person entitled to the confidentiality provided under Louisiana's statute and the Eastern District's local rule—counsel for Morris Bart forwarded a copy of this Court's Orders and MMA's discovery demanding disclosure of these communications to Judge North's e-filing email address, with counsel for MMA copied, to provide notice of the same. This communication was not "ex parte," as counsel for MMA was copied, nor is it in any way improper. MMA's claims to the contrary are without merit.

   v. *Should this Court and/or the District Court find the sought communications relevant and not unduly burdensome, Morris Bart has no objection to providing a privilege log.*

MMA makes much noise in its Motion regarding Morris Bart's "refusal" to provide a privilege log. A privilege log, however, is not required where the sought communications or documents are withheld on the basis of relevance or undue burden under Federal Rule of Civil Procedure 26, as they are here. *See Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.,* 348 F.R.D. 54, 82–83 (E.D. La. 2024), *review denied sub nom. Goodyear Tire & Rubber Co.*

19

*v. CEVA Logistics Singapore Pte Ltd,* No. CV 22-4561, 2024 WL 5086077 (E.D. La. Dec. 12, 2024) ("Redactions based on relevance are not invocations of privilege that must be specified on a privilege log. A privilege log is required only when a party seeks to withhold from production a relevant document."). Should this Court or the District Court on appeal find that the requested communications are discoverable as relevant and proportional to the needs of this case and not unduly burdensome, then Morris Bart will provide a privilege log of the same.

Morris Bart further notes that it has communicated to counsel for MMA that a privilege log will be produced with Morris Bart's final document production in relation to the Discovery Requests, which separately request communications with "all third parties" regarding MMA, resulting in over 50,000 potentially responsive documents that Morris Bart is currently reviewing for responsiveness and privilege.

## III. CONCLUSION

Wherefore, for the foregoing reasons, Morris Bart respectfully asks that the Court deny MMA's Motion to Compel and uphold Morris Bart's objections to MMA's Discovery Requests, specifically Interrogatory Numbers 6 and 9, Request for Production Numbers 8 and 9, and Request for Admission Number 1.

DATED:          November 3, 2025                    Respectfully submitted,

                                                    **THE PROBUS LAW FIRM**

                                                    By: */s/ Matthew B. Probus*
                                                         **Matthew B. Probus**
                                                         Attorney in Charge
                                                         State Bar No. 16341200
                                                         Fed. I.D. No. 10915
                                                         matthewprobus@theprobuslawfirm.com

                                                    10497 Town & Country Way, Suite 930
                                                    Houston, Texas 77024

4074671v2

(713) 258-2700 (Telephone)
(713) 258-2701 (Facsimile)

-and-

**FISHMAN HAYGOOD, L.L.P.**

*/s/ Tristan Manthey*
Tristan Manthey
Tex. Bar No. 24042731
Cherie Dessaur Nobles, *pro hac vice*
Rebekka C. Veith, *pro hac vice*
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
(504) 586-5252 (Telephone)
(504) 586-2520 (Facsimile)
tmanthey@fishmanhaygood.com
cnobles@fishmanhaygood.com
rveith@fishmanhaygood.com

*COUNSEL FOR DEFENDANT,*
*MORRIS BART, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2025, a true and correct copy of the foregoing has been served on all parties electronically via the CM/ECF filing system.

*/s/ Matthew B. Probus*
Matthew B. Probus

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 9013-1(g), I hereby certify that the relief requested by MMA in their Motion to Compel was discussed during a conference between counsel for MMA and counsel for Morris Bart on October 13, 2025, and the parties could not reach an agreement foregoing the need for a hearing.

*/s/ Matthew B. Probus*
Matthew B. Probus

4074671v2